1
2
3
4
5
6                     IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   Otis Eugene Bunn,                      )   No. CV-13-1424-PHX-GMS (LOA)
                                           )
10            Petitioner,                  )   **REPORT AND RECOMMENDATION**
                                           )
11  vs.                                    )
                                           )
12                                         )
    Charles L. Ryan, et al.,               )
13                                         )
              Respondents.                 )
14  _____  )

15
16          This matter is before the Court on Petitioner's *pro se* Petition for Writ of Habeas

17  Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, in which Petitioner challenges his

18  criminal convictions in Maricopa County, Arizona, Superior Court, Case No. CR2005-

19  129654-001 DT. (Doc. 1)  Respondents have filed an Answer to Petition for Writ of Habeas

20  Corpus (the "Answer"). (Doc. 10)  Petitioner has not filed a reply. As explained below, the

21  undersigned Magistrate Judge recommends the Petition be denied.

22  **I. Background**

23          **A. Indictment, Trial and Sentencing**

24          On September 23, 2005, the State of Arizona indicted Petitioner on one count of

25  Fraudulent Schemes and Artifices, a Class Two felony (Count One); one count of Theft, a

26  Class Three felony (Count Two); one count of Possession of Drug Paraphernalia, a Class Six

27  felony (Count Three); and two counts of Forgery, a Class Four felony (Counts Four and

28  Five). (Doc. 10, Exh. B) The charges arose "from the investigation of a series of checks

1   drawn on the victim's Charles Schwab account, without the victim's authorization, and
2   deposited in [Petitioner's] bank account." (Doc. 10, Exh. KKK at 2) The trial court
3   subsequently granted a motion by Petitioner to sever the drug paraphernalia charge from the
4   remaining counts. (*Id.*)

5       A jury trial was held in October 2009 at which Petitioner represented himself.[1] (*Id.*)
6   The jury found Petitioner guilty of Fraudulent Schemes and Artifices and Theft, but not
7   guilty of the two counts of Forgery. (*Id.* at 2-3) Petitioner, who had prior felony convictions,
8   was sentenced on May 6, 2010, to concurrent prison terms of 15.75 years on the Fraudulent
9   Schemes conviction and 11.75 years on the Theft conviction. (Doc. 10, Exh. GGG at 15-16)

10      **B. Direct Review**

11      Petitioner filed an untimely *pro se* Notice of Appeal on June 1, 2010. (Doc. 10, Exh.
12   OOO) Through counsel, Petitioner subsequently obtained permission from the trial court to
13   file a delayed notice of appeal, which was filed on November 3, 2010. (Doc. 10, Exhs. TTT,
14   UUU) In the Opening Brief, Petitioner raised one issue. Petitioner claimed the trial court
15   erred when it failed to determine that Petitioner's decision to waive his right to counsel and
16   represent himself was made knowingly, intelligently and voluntarily. (Doc. 10, Exh. JJJ) On
17   August 21, 2012, the Arizona Court of Appeals issued a Memorandum Decision in which it
18   affirmed Petitioner's convictions and sentences. (Doc. 10, Exh. KKK) Petitioner then filed
19   a *pro se* Petition for Review in the Arizona Supreme Court in which he raised the same issue
20   that was presented in the Arizona Court of Appeals. (Doc. 10, Exh. LLL) The Arizona
21   Supreme Court summarily denied review on February 13, 2013. (Doc. 10, Exh. MMM)

22      **C. Federal Habeas Petition**

23      On July 12, 2013, Petitioner filed his Petition for Writ of Habeas Corpus in this
24   District Court. (Doc. 1) Petitioner raises one ground for relief in the Petition. Petitioner
25   alleges the trial court's determination that he was able to represent himself was
26   constitutionally defective. Petitioner argues he did not knowingly, intelligently or voluntarily

27

28      _____

      [1] The Honorable John R. Ditsworth presided over the trial and sentencing.

1   waive his right to trial counsel, and the waiver was not in writing. Petitioner claims the trial
2   court's actions violated his Sixth Amendment right to counsel. On October 25, 2013,
3   Respondents filed their Answer and supporting exhibits. (Doc. 10) As noted above, Petitioner
4   did not file a reply.

5   **II. Discussion**

6         Respondents argue in the Answer that the Petition should be denied and dismissed
7   with prejudice because the Arizona Court of Appeals' resolution of Petitioner's Sixth
8   Amendment claim was not contrary to, or an unreasonable application of, clearly established
9   United States Supreme Court precedent.

10        **A. Standard of Review**

11        A federal district court's review of a habeas petitioner's claim is constrained by the
12  standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism
13  and Effective Death Penalty Act ("AEDPA").[2] The ADEPA "modified a federal habeas
14  court's role in reviewing state prisoner applications in order to prevent federal habeas
15  'retrials' and to ensure that state-court convictions are given effect to the extent possible
16  under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is intended
17  to be "difficult to meet." *Harrington v. Richter*, 562 U.S. ___ , 131 S.Ct. 770, 786 (2011).
18  The statute "stops short of imposing a complete bar on federal court relitigation of claims
19  already rejected in state court proceedings," and "preserves authority to issue the writ in
20  cases where there is no possibility fairminded jurists could disagree that the state court's
21  decision conflicts with [Supreme Court] precedents." *Id*. (citations omitted). "Section
22  2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the
23  state criminal justice systems,' not a substitute for ordinary error correction through appeal."
24  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

25        "[W]ith respect to any claim that was adjudicated on the merits in State court
26

27        [2] The AEDPA, which was signed into law on April 24, 1996, governs federal habeas
28  petitions filed after the date of its enactment. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997).

proceedings," a federal court "shall not" grant habeas relief unless the State court's decision "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court," or the decision "was based on an unreasonable determination of the facts" in light of the record before the State court. 28 U.S.C. § 2254(d)(1), (2); *Green v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011). As discussed above, this is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation omitted). The petitioner bears the burden of proving the standards for habeas relief have been met. *Id*. at 25. When applying the standards set forth in § 2254(d), a federal court should review the "last reasoned decision" by the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, federal courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Cullen v. Pinholster*, __ U.S.__, 131 S.Ct. 1388, 1399 (2011). The Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.  2003). Even if the State court neither explains its ruling nor cites United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the State court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). Compliance with the habeas statute "does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief." *Richter*, 131 S.Ct. at 784.

Under § 2254(d), a State court's decision is "contrary to" clearly established federal

1   law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court]

2   cases or if it confronts a set of facts that are materially indistinguishable from a decision of

3   [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court]

4   precedent." *Mitchell v. Esparza*, 540 U.S 12, 15-16 (2003) (citations omitted); *Williams v.*

5   *Taylor*, 529 U.S. 362, 405-406 (2000). A state court's decision involves an "unreasonable

6   application of" federal law if the court identifies the correct legal rule, but unreasonably

7   applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005);

8   *Williams,* 529 U.S. at 407-408. This standard requires more than merely an incorrect

9   application of federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating

10  that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively

11  unreasonable."). "A state court's determination that a claim lacks merit precludes federal

12  habeas relief so long as 'fairminded jurists could disagree on the correctness of the state

13  court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664).

14  "'[E]valuating whether a rule application was unreasonable requires considering the rule's

15  specificity. The more general the rule, the more leeway courts have in reaching outcomes in

16  case-by-case determination.'" *Id.* The undersigned Magistrate Judge will consider

17  Petitioner's claim in view of the foregoing standards.

18          **B. Analysis**

19          Petitioner alleges in his only ground for relief that he was denied the right to counsel

20  in violation of the Sixth Amendment when the trial court erroneously determined Petitioner

21  waived his right to counsel and chose to represent himself. Petitioner claims he did not

22  knowingly, intelligently and voluntarily waive his right to counsel and never signed a written

23  waiver. He contends a request to proceed without counsel must be unequivocal and the facts

24  of this case do not show he made an unequivocal request. Petitioner further contends he was

25  forced to choose between incompetent counsel and no counsel at all. Finally, he cites Rule

26  6.1(c), Arizona Rule of Criminal Procedure, which provides that a waiver of the right to

27  counsel must be in writing. Petitioner has attached to his Petition a copy of the Opening Brief

28  submitted by counsel in his direct appeal, which raised the same issue Petitioner presents

here. (Doc. 1 at 13-44)

The controlling Supreme Court precedent on a criminal defendant's right to waive counsel and represent himself at trial is *Faretta v. California*, 422 U.S. 806 (1975). In *Faretta*, the United States Supreme Court held that a defendant in a state criminal trial has a right under the Sixth and Fourteenth Amendments to represent himself if he clearly and unequivocally makes such a request. *Faretta,* 422 U.S. at 835-36. To represent himself, an accused must knowingly and intelligently relinquish the benefits associated with the right to counsel. *Id.* at 835. A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835 (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)); *see also Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

The "last reasoned decision" by the State court, to which the habeas standards are applied, is the Memorandum Decision issued by the Arizona Court of Appeals on direct review. *See Robinson*, 360 F.3d at 1055. In that decision, the Court of Appeals found "that the trial court did not abuse its discretion in implicitly finding that [Petitioner] knowingly, intelligently and voluntarily waived his right to counsel and granting [Petitioner's] motion to represent himself at trial." (Doc. 10, Exh. KKK at 12) The Court concluded, "The record in this case fully supports a finding that [Petitioner] knowingly, intelligently and voluntarily chose to represent himself at trial." (*Id.* at 7-8)

Citing *Faretta,* the Arizona Court of Appeals explained it is well-established that an individual has a fundamental constitutional right to represent himself in court in a criminal case. (Doc. 10, Exh. KKK at 5-6) The Court of Appeals also addressed the right of an accused to conduct his own defense under Arizona law. (*Id.*) For example, the Court referenced Ariz.R.Crim.P. 6.1(c), which calls for a defendant's waiver of his right to counsel to be in writing. (*Id.* at 7) On federal habeas review, however, the undersigned Magistrate Judge considers only whether Petitioner's federal constitutional rights were violated. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus does not lie for errors of state law.")

1    The Court of Appeals explained that the most complete exchange between Petitioner

2    and the trial court regarding the waiver of counsel occurred at a hearing on February 26,

3    2007. (Doc. 10, Exh. KKK at 3)  During that exchange, defense counsel advised the trial

4    court that Petitioner had "filed a motion to go pro per." (*Id.*) The trial court then asked

5    Petitioner if it was still his desire to go pro per, to which Petitioner responded, "Yes, sir."

6    (*Id.*) When the trial court asked Petitioner if he had considered this, Petitioner responded,

7    "Yes." (*Id.*) The trial court also asked Petitioner if he had talked about this with defense

8    counsel, to which Petitioner responded, "We did talk somewhat." (*Id.*) The trial court then

9    asked Petitioner whether he wanted to continue with his current defense counsel in the role

10   of advisory counsel. (*Id.*) Petitioner said he thought it would be better to appoint new

11   advisory counsel. (*Id.*) The trial court then granted Petitioner's motion for pro per status and

12   appointed new advisory counsel. (*Id.*)

13   The Court of Appeals cited several other portions of the record to support its

14   conclusion that Petitioner knowingly, intelligently and voluntarily waived his right to

15   counsel. Based on a settlement conference held on January 11, 2008, the Court of Appeals

16   determined it was clear Petitioner understood well before trial the nature of the charges and

17   the potential punishment he faced upon conviction. (Doc. 10, Exh. KKK at 8) At the

18   settlement conference, the trial court reviewed the charges and potential sentences. (*Id.*)

19   Even though defense counsel appeared with Petitioner, Petitioner addressed the court

20   himself, said he was representing himself, and said he was not interested in a plea bargain

21   but only a fair trial. (*Id*.) The Court of Appeals found Petitioner also demonstrated his

22   understanding of the trial process by complaining to the court that he had filed several

23   motions for discovery but had not received anything from the State. (*Id.*)

24   The Court of Appeals also referenced Petitioner's August 12, 2008 motion to dismiss

25   his counsel as both counsel of record and advisory counsel and proceed alone in all of his

26   pending cases. (Doc. 10, Exh. KKK at 8)  The motion explained that Petitioner was seeking

27   "self-representation," cited Ariz.R.Crim.P. 6.1(c) and *Faretta*, and noted that the Sixth

28   Amendment grants a criminal defendant "personally the right to make his defense." (*Id.* at

1   8-9)

2       The Court of Appeals referenced another motion filed by Petitioner in June 2009

3   entitled, "Motion to Change Counsel." (*Id.* at 9)  In the motion, Petitioner asked that his then

4   counsel be withdrawn and that no other attorney be substituted. (*Id.*) The motion again cited

5   the Arizona rule for waiver of the right to counsel, Ariz.R.Crim.P. 6.1(c), and stated, "The

6   [Petitioner] seek[s] self-representation." (*Id.*) The Court of Appeals found these motions to

7   be the functional equivalent of a voluntary, written waiver for purposes of Rule 6.1,

8   Ariz.R.Crim.P. (*Id.*)

9       In addition, the Court of Appeals cited other on-the-record discussions of Petitioner's

10  decision to waive counsel. At a status conference on February 15, 2007, the trial court

11  cautioned Petitioner about self-representation, stating it was the trial court's job "to advise

12  you of the dangers and disadvantages of representing yourself . . . ." (Doc. 10, Exh. KKK at

13  10) This occurred before the trial court issued its February 26, 2007 ruling granting

14  Petitioner's motion to proceed *pro per*. (*Id.*)

15      At a later status conference on June 29, 2009, Petitioner again confirmed he did not

16  want a lawyer and felt qualified to proceed on his own. (*Id.*) Before jury selection for

17  Petitioner's trial on October 6, 2009, the trial court reviewed with Petitioner the role of his

18  advisory counsel and explained to Petitioner that "[y]ou're the one in charge because this is

19  the decision you've made." (*Id.*) The trial court then again asked Petitioner if it was still his

20  desire to go forward as his own lawyer, to which Petitioner responded, "Oh, yes, sir." (*Id.*)

21      The Court of Appeals went on to cite other factors in the record that "support the

22  finding that [Petitioner] was fully aware of a trial attorney's role and of the disadvantages of

23  self-representation and that he knowingly, intelligently and voluntarily waived his right to

24  counsel." (*Id.*) Those factors included Petitioner's extensive criminal record, and his

25  testimony at his trial in which he admitted three prior felony convictions and acknowledged

26  being represented by counsel for two of them. (*Id.* at 10-11) The Court of Appeals found

27  those factors supported an inference that Petitioner was "aware of the role of trial counsel

28  and, consequently, of the risks and dangers of self-representation." (*Id.* at 11)

1   Another factor was a statement Petitioner made to the jury panel after two prospective
2   jurors expressed reluctance to serve on the jury because Petitioner was representing himself.
3   (*Id.*)  Petitioner explained to the panel that he had a right as a citizen of the United States to
4   represent himself, and that under the Constitution, a person does not have to have a lawyer
5   represent himself. (*Id.*) The Court of Appeals found this statement "clearly supports the
6   inference that Defendant's decision to represent himself was knowing and voluntary." (*Id.*
7   at 12) As noted above, based on all these factors, the Court of Appeals found no error in the
8   trial court's implicit finding that Petitioner knowingly, intelligently and voluntarily waived
9   his right to counsel and the trial court's decision to grant Petitioner's motion to represent
10  himself at trial.

11  Despite bearing the burden of proving the standards for habeas relief have been met,
12  Petitioner here does not even address the Arizona Court of Appeals decision and,
13  consequently, makes no argument that this decision was contrary to, or an unreasonable
14  application of, United States Supreme Court precedent. He also fails to argue the decision
15  was based on an unreasonable determination of the facts. Having failed to file a reply,
16  Petitioner addresses none of Respondents' arguments pertaining to the standard of review in
17  federal habeas cases. By attaching to the Petition the Opening Brief from his direct appeal,
18  Petitioner is essentially asking the federal court to perform a *de novo* review of his claim
19  before the Arizona Court of Appeals. As set forth in 28 U.S.C. § 2254(d), however, federal
20  habeas review is much more stringent than that.

21  After review of the State court record, this Magistrate Judge finds no basis to conclude
22  that the Arizona Court of Appeals decision was objectively unreasonable. The decision was
23  not contrary to, or an unreasonable application of, *Faretta*. Additionally, the decision was
24  not based on an unreasonable determination of the facts in light of the record before the
25  Court of Appeals. The Court of Appeals cited numerous portions of the record that
26  demonstrate Petitioner's decision to waive counsel was made knowingly, intelligently and
27  voluntarily. The record clearly shows the high standard for habeas relief has not been met
28  here.

## C. Conclusion

For the foregoing reasons, Petitioner's sole claim for relief in Ground One fails to satisfy the standards for habeas relief under 28 U.S.C. §§ 2254(d). Accordingly, the Court will recommend that the Petition be denied.

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, doc. 1, be **DENIED**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, must not be filed until entry of the District Court's judgment. The parties have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the undersigned Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. *See* Fed.R.Civ.P. 72.

DATED this 28th day of April, 2014.

Lawrence O. Anderson
United States Magistrate Judge